FILED

2005 Jan-04  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOYCE  H.  MITCHELL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **CV-04-PT-0395-E** |
| | ) | |
| **CLAY COUNTY BOARD OF** | ) | |
| **EDUCATION**, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Clay County Board of Education's

Motion for Summary Judgment, filed on November 8, 2004.

## FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Joyce H. Mitchell ("Mitchell") is a resident of Ashland, Alabama in Clay

County.  (Cmpt. ¶ 3).  The defendant is the Clay County Board of Education ("Board of

Education").  (*Id.*)

Mitchell received her degree in education from Jacksonville State University and taught

in Florida from 1962 until 1992, when she and her husband moved to Alabama to be closer to his

aging parents.  (Cmpt. ¶ 18).  In 1992, when Mitchell was 55-years-old, she submitted an

application and resume to the Board of Education.  (*Id.* at ¶¶ 6-7).  Although the Board of

Education used Mitchell as a substitute teacher, it did not hire her for a permanent position.  (*Id.*

at ¶ 8).  In 1997, Mitchell, then age 60, filed a charge of age discrimination with the EEOC,

---

[1] The court notes where "facts" appear disputed.

1

which issued a cause finding in 1998.  (*Id.* at ¶¶ 9-10).  Following this finding, the Board of Education hired Mitchell in August of 2000 to teach second grade at Bibb Graves Elementary School.  (*Id.* at ¶ 11).  At the end of the 2000-2001 school year, the Board of Education did not renew Mitchell's employment contract.  (Cmpt. ¶ 12; Ans. ¶ 6).

According to Mitchell, she interviewed at three schools in the Clay County School System for the 2001-2002 school year but was not hired.  (Cmpt. ¶ 15).  In the Summer of 2002, Mitchell again sought teaching positions from the Board of Education but was not hired.  (*Id.* at ¶ 16).  Mitchell alleges that teachers who were younger than she were hired during this time.  (*Id.* at ¶ 16).

On January 13, 2003, Mitchell filed a second EEOC charge alleging age discrimination against the Board of Education[2] and, on January 21, 2004, she was issued a Notice of Right to

---

[2] The EEOC charge alleged:

I.      My name is Joyce H. Mitchell.

II.     Respondent has discriminated against me on the basis of age.

III.    In September of 1997, I filed a charge with the EEOC.  The EEOC found cause that I had been discriminated against based on my age because Respondent had refused to hire me.  As a result of that finding, I was hired by Respondent in August of 2000 to teach second grade at Bibb-Graves. At the end of that school year, May of 2001, I was terminated.  I was told that I was terminated because of reduction in force.  However, I was replaced by a girl who was not a member of the protected classification.

IV.     After being terminated, I went for interviews at three schools and was not hired.  I was not able to work during the 2001-2002 school year.

V.      In the Summer of 2002, I sought positions from Respondent, but was not hired.  The last interview that I went on was in August of 2002.

VI.     Upon information and belief, teachers that were not within the protected

Sue. Mitchell filed this action against the Board of Education on February 27, 2004 under the "Age Discrimination in Employment Act," 29 U.S.C. §621, *et. seq*. Mitchell's Complaint contains one count for age discrimination.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)

---

age category were hired for the positions for which I sought.

VII.    I am currently 65 years of age.

VIII.   I believe I have been discriminated against based on my age in violation of the ADEA.

[3] Count One states:

Plaintiff was denied teaching positions with Defendant because of her age in violation of the ADEA.

Plaintiff was terminated from her teaching position because of her age in violation of the ADEA.

As a result of the illegal actions of Defendant, Plaintiff has been damaged financially.

(Cmpt. ¶¶ 24-26).

(quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

**I.   Plaintiff's Opposition to Defendant's Motion for Summary Judgment.**

**A.   Plaintiff Satisfies the Jurisdictional Prerequisites.**

Plaintiff asserts that she has met the jurisdictional prerequisites to filing this action. Plaintiff maintains that the 180-day limitations period for filing a charge of discrimination did not begin to run until she learned that younger employees were hired into positions she sought with defendant. *See Jones v. Dillard's, Inc.,* 368 F.3d 1278, 1279 (11th Cir. 2004) (stating, "the

4

180-day limitations period for filing a charge of discrimination did not begin to run until
[plaintiff] learned that she had been replaced by a younger employee, notwithstanding her earlier
suspicion of age discrimination").  Plaintiff asserts that, because she filed her EEOC charge on
January 13, 2003, any discriminatory action after July 17, 2002 falls within the statute of
limitations.  Plaintiff points to her deposition testimony that she learned of some younger
teachers receiving their teaching positions by reading the newspaper, (Mitchell Depo., pp. 60-62),
and to an August 15, 2002 Article from the Clay County *Times-Journal* indicating that several
new teachers had been appointed, (Pl's Exh. 38).  Plaintiff also points out that she received her
Notice of Right to Sue on January 21, 2004 and filed the instant lawsuit on February 27, 2004.

> **B.     Plaintiff Satisfies the Elements of the Prima Facie Case.**

Plaintiff argues that she satisfies the elements of a prima facie case: (1) she was over the
age of forty at the time of the alleged discrimination; (2) she was qualified for the position of
elementary teacher; (3) she was not hired by defendant in 2002; and (4) defendant hired younger
employees to fill the positions.  *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133,
142 (2000) (discussing the prima facie elements of an age discrimination suit under the ADEA).

Specifically, plaintiff contends that the following evidence supports her prima facie case.

> **1.     Plaintiff Was a Member of a Protected Class.**

Plaintiff's date of birth is April 5, 1937.  In 2002, when the hiring decisions at issue were
made by defendant, plaintiff was sixty-five years of age.

> **2.     Plaintiff Applied For and Was Otherwise Qualified for the Positions**.

Plaintiff argues that she was well qualified for the position of elementary school teacher.
Plaintiff draws the court's attention to her resume, which shows that she received her Bachelor of

Science degree in Elementary Education in 1961 from Jacksonville State University. (Pl's Exh. 7). Plaintiff taught as an elementary teacher for one year in the Calhoun County Schools and for several years in Florida. (*Id.*) She received her Master's degree in Elementary Education from the University of Central Florida in 1976. (*Id.*) She continued teaching in Florida until she retired in 1992 to move to Alabama. (*Id.*; Mitchell Depo., pp. 11-12). Plaintiff testified that she was never non-renewed or fired by a school system in Florida. (Mitchell Depo., pp. 12-13).

According to plaintiff, immediately upon moving to Clay County, she began applying for teaching positions with defendant. (Mitchell Depo., p. 16). Plaintiff has produced her "Teacher Application" dated May 19, 1994 and indicating that it is a revision from 1992. (Pl. Exh. 8). This application includes references to prior administrators. (*Id.*) Plaintiff further provided defendant with letters of recommendation from administrators under whom she served as a teacher. (Pl. Exh. 9).

Plaintiff asserts that she was not hired by defendant until she filed an EEOC charge in September of 1997, alleging age discrimination. (Pl. Exh. 10). Plaintiff draws the court's attention to the March 31, 1998 determination by the EEOC that there was reasonable cause to believe that she had been subjected to age discrimination. (Pl. Exh. 11). Plaintiff points to a November 22, 1999 letter from the EEOC which shows that, in a settlement reached by plaintiff and defendant, defendant agreed to hire plaintiff as an elementary teacher in the next position that became open. (Pl. Exh. 12). Plaintiff testified that defendant hired her as a second-grade teacher at Bibb Graves Elementary for the 2000-2001 school year. (Mitchell Depo., p. 16). Plaintiff points to documentation showing that defendant verified her prior teaching experience in 2000 during the hiring process. (Pl. Exh. 13). Plaintiff obtained an emergency teaching certificate for

the 2000-2001 school year and received a regular teaching certificate for 2001-2006 (Pl. Exh. 14).

Plaintiff taught for one year but was notified by letter on May 18, 2001 that her contract would not be renewed for the 2001-2002 school year.  (Pl. Exh. 15).  Plaintiff testified, and a notice signed by defendant's payroll clerk indicated, that the reason given for the non-renewal was a layoff.  (Mitchell Depo., p. 47; Pl. Exh. 16).  Plaintiff testified that she was told she could reapply for the next year, and that she did so.  (Mitchell Depo, pp. 27-28, 36-37).  Plaintiff asserts that she was not hired for the 2001-2002 school year.[4]

Plaintiff argues that, because she held the requisite qualifications for the position of teacher and had, in fact, taught in defendant's system, she was qualified to perform the function of teacher in 2002.  According to plaintiff, she held the position of elementary teacher and did so adequately for a significant period of time, satisfying her burden under the prima facie case.  *See Damon v. Fleming Supermarkets Of Florida, Inc.,* 196 F.3d 1354, 1360 (11th Cir. 1999) (stating, "in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred" (citations omitted)).

### 3.    Plaintiff Suffered an Adverse Employment Action.

Plaintiff asserts there is no dispute that she was not hired by defendant in 2002.  Plaintiff testified that she was interviewed by Superintendent Gene Miller ("Miller") in 2001.  (Mitchell

---

[4] According to plaintiff, she was replaced by Melissa Harris, who was twenty-four at the time and had no teaching experience.  Plaintiff points to the deposition testimony of Clay County Superintendent Gene Pierson Miller, in which Miller stated: "From what I found out, Melissa Harris was hired to replace Ms. Mitchell."  (Miller Depo., p. 49).

Depo., pp. 35-36).  According to plaintiff, during this interview she and Miller discussed her qualifications and past work history.  (*Id.* at p. 36).  Plaintiff stated that she told Miller that she was not seeking a particular position but wanted to be considered for any positions that were available.   (*Id.* at p. 37).  Plaintiff testified that Miller told her to check with the principals at the individual schools, and that in the summer of 2002 she did so.   (*Id.* at pp. 37, 62-64).  During the summer of 2002, plaintiff applied for positions at three elementary schools operated by defendant and was interviewed by two of the principals.   (*Id.* at pp. 62-64).  In her deposition, plaintiff asserted that she had no knowledge of anyone on the Board of Education recommending her for the teaching positions, and that she was never given a reason for not being hired.  (  (*Id.* at pp. 42, 53).  Miller testified that he was aware that plaintiff had later applied for other positions that came available after that summer (Miller Depo., p. 47).  He further testified that, at the time he made the recommendations to the Board to hire others for those openings,  he knew that plaintiff wanted those jobs.   (*Id.* at pp. 48-49).

### 4.     The Positions Were Filled with Persons Not Members of the Protected Class.

Plaintiff argues that defendant hired at least seven younger, less-qualified teachers for the 2002-2003 school year.[5]

#### (a)     Lisa Hughes.

Plaintiff points to a listing of teachers produced by defendant which indicates that Lisa Hughes ("Hughes") was hired by defendant on August 12, 2002 to teach fourth grade.  (Pl. Exh.

---

[5] From the documents obtained from defendant, plaintiff contends, it appears that these seven teachers were the only teachers newly employed in elementary positions in the 2002 year. Therefore, plaintiff argues, all the newly hired teachers were younger and less qualified.

17).  Plaintiff argues that, although there is no application in her personnel file, it is clear from the available documents that Hughes did not have prior teaching experience before being hired by defendant.  Plaintiff notes that the Salary Schedule in Hughes' personnel file indicates that she had a bachelor's degree and no experience in the public sector.  (Pl. Exhs. 18, 19).[6]  A Letter of Understanding also indicates that a criminal background check on Hughes had not been completed at the time she was hired by defendant.  (Pl. Exh. 20).  Hughes was born on September 29, 1959 and was 43-years-old at the time of her hiring.  (Pl. Exh. 17).

        **(b)   Heidi Jones.**

Plaintiff points to the resume of Heidi Jones ("Jones"), which indicates that she had a bachelor's degree, one year of teaching experience, and one year of substitute teaching experience at the time she was hired by defendant.  (Pl. Exh. 21).  Jones was hired to teach sixth grade by defendant on August 12, 2002.  (Pl. Exh. 17).  Her date of birth is November 30, 1975 and she was 27 at the time she was hired.  (*Id.*)

        **(c)   Lisa McVay.**

Plaintiff points to a form completed by defendant for the Alabama Department of Education which indicates that Lisa McVay was hired in August 2002 to teach the fifth grade.  (Pl. Exh. 22).  McVay's resume indicates that she received a bachelor's degree in 1998 and taught for three years prior to being hired by defendant.  (Pl. Exh. 23).  McVay's birth date is March 20, 1975 and she was 27 at the time she was hired.  (Pl. Exh. 17).

        **(d)   Kelly Smith.**

---

[6] Hughes' personnel file does indicate that she had some previous teaching experience in private schools.  (Pl. Exh. 19).

Plaintiff points to an Application for Employment with defendant completed by Kelly Gidley Smith ("Kelly Smith") on August 26, 1996.  (Pl. Exh. 25).  This application indicates that Kelly Smith obtained a bachelor's degree in education but had not taught previously.  (*Id.*)  A letter from defendant, dated May 1, 1998 and stating that Kelly Smith's employment had been continued for the next school year, indicates that she worked as a teacher for defendant from 1997 through 1999.  (Pl. Exh. 26).  A form completed for the Alabama Department of Education indicates that Kelly Smith was employed as an elementary school teacher by the Talladega County Board of Education from August 1999 through May 2001.  (Pl. Exh. 27).  Kelly Smith was rehired by defendant in August 2001.  (Pl. Exh. 17).  According to plaintiff, Kelly Smith is still employed as a fourth grade teacher with defendant.  A letter from Superintendent Miller dated May 17, 2002 indicates that, like plaintiff, Kelly Smith was a non-tenured teacher and her contract was not renewed for the 2002-2003 school year.  (Pl. Exh. 28).  However, unlike plaintiff, Kelly Smith was rehired and allowed to continue in the same position for the 2002-2003 school year.  (Pl. Exh. 17).  Kelly Smith's date of birth is November 26, 1972 and she was approximately 30 when she was rehired by defendant in 2002.  (*Id.*)

   **(e)   Sandy Smith.**

Sandy Smith filled out an application for a teaching position with defendant in 1998 and was hired in 1999.  (Pl. Exhs. 17, 29).  Her application indicates that she had a bachelor's degree and no prior teaching experience when hired.  (Pl. Exh. 29).[7]  A letter dated May 18, 2001 from former Superintendent Don Fulbright indicates that Sandy Smith's employment was not renewed

---

   [7]  Sandy Smith subsequently received her Master's degree in education in 2003, after the employment actions at issue in this case.  (Pl. Exh. 30).

for the 2001-2002 school year.  (Pl. Exh. 31).  However, records obtained from defendant

indicate that she was rehired for that school year.  (Pl. Exh. 17).  Sandy Smith's date of birth is

July 28, 1975 and she was approximately 27 in 2002.

       **(f)**     **Shannon Taylor.**

Shannon Taylor ("Taylor") was hired by defendant on August 12, 2002 as a third grade

teacher.  (Pl. Exh. 17).  James Young, principal of Lineville Elementary School, recommended

Taylor for the position in a letter dated August 2, 2002.  (Pl. Exh. 32).  The letter indicates that

Taylor had earned a bachelor's degree in elementary education and that her only teaching

experience was during a maternity leave of another teacher.  (*Id.*)  Taylor's date of birth is July

16, 1979 and she was 23 when defendant hired her.  (Pl. Exh. 17).

       **(g)**     **Greg Gidley.**

Greg Gidley ("Gidley") was hired by defendant on August 1, 2001.  (Pl. Exh. 17).  Gidley

graduated from Auburn University Montgomery in 2001 with a bachelors degree.  (Pl. Exh. 33).

Plaintiff argues Gidley could not have had prior teaching experience before being hired by

defendant.  Gidley's date of birth is September 22, 1970 and he was 31 at the time he was hired.

(Pl. Ex. 17).

**C.**     **Defendant Fails to Articulate a Legitimate Reason for Its Failure to Hire Plaintiff.**

According to plaintiff, defendant has never articulated a reason for its failure to hire her

in the summer of 2002.  Plaintiff notes that, in its December 16, 2003 Determination, the EEOC

stated, "Respondent offered no legitimate nondiscriminatory reason for its failure to hire the

Charging Party."  (Pl. Exh. 34).

11

When asked in his deposition, Superintendent Miller testified that he knew of no reason plaintiff was not rehired by defendant except that she was not recommended.  (Miller Depo., p. 55).[8]  Miller further testified that he had no knowledge of any performance problems during plaintiff's year of teaching for defendant.  (*Id.* at 59).  Miller also did not discuss plaintiff specifically with any of the principals.  (*Id.* at 47-48).[9]

Nina Hobdy ("Hobdy"), Principal of Ashland Elementary School, testified that she interviewed plaintiff for five positions.  (Hobdy Depo., p. 20).[10]  She never recommended plaintiff for any position.  (*Id.* at 21).  Hobdy testified that she did not recall anything negative about the plaintiff from those interviews.  (*Id.* at 23).  Hobdy also did not consult with any of plaintiff's prior supervisors or co-employees before making the decisions.  (*Id.*)  She further stated that her meetings with plaintiff did not cause her to have any concerns about her.  (*Id.* at 37).  Hobdy also asserted that she could not recall any reason to believe that plaintiff would not blend in well with those at her school.  (*Id.* at 44).

Plaintiff points out that, although Hobdy had a hard time remembering whom she did recommend for positions for which plaintiff expressed interest, she "believed" that Kelly Smith

---

[8] Plaintiff notes that Miller was designated by defendant as a 30(b)(6) representative. (Miller Depo., p. 69).

[9] Plaintiff points out that defendant's supplemental discovery response states that Miller spoke with four administrators, JoAnn Blair, Bobby Vinson, Jimmy Luker and Winston Wheeles, and all recommended that plaintiff not be hired because she was a weak teacher and a weak disciplinarian.  (Pl. Exh. 36).  Given Miller's deposition testimony, plaintiff argues that this response was a mistake or contrivance.

[10] Plaintiff notes that Hobdy testified that she interviewed plaintiff in 2003.  (Hobdy Depo., p. 20).  Plaintiff argues that Hobdy probably misspoke because plaintiff did not interview for any positions in 2003.

was one of them.  (Hobdy Depo., pp. 15-16).  The only reason Hobdy gave for why she chose Smith was, "I just felt like that she was the best person for that particular job at the time."  (*Id.* at 17).  This was also her reason for recommending other teachers.  (*Id.* at 20-23).

Jim Young ("Young") was the principal of Lineville Elementary School in Clay County in 2002.  (Young Depo., p. 7).  Young testified that he remembered interviewing plaintiff, but he could not recall when.  (*Id.* at 9).  According to Young, Gidley received the job for which plaintiff interviewed with him.  (*Id.* at 10).  This was a position teaching fifth grade.  (*Id.* at 9).  Young testified that plaintiff told him that she preferred a lower grade level because she was not comfortable with older students.  (*Id.* at 10).  However, plaintiff testified that she interviewed with Young for two open positions, one of which was for a second grade teacher.  (Mitchell Depo., pp. 52-53).  According to plaintiff, she told Young that she preferred the second grade position, but she did not tell him that she was not interested in the other position.  (*Id.* at 53).  Plaintiff asserts that, although Young stated that her interview answers "were not as strong in context and content as some of the answers that I may have received from some of the other applicants," he could not articulate any more specific problems with her interview.  (Young Depo., p. 17).

Plaintiff argues that the testimony of defendant's administrators and officials fails to meet its burden of articulating a legitimate reason for its failure to hire plaintiff in each instance.  Although this burden is one of production, not persuasion, plaintiff maintains that defendant is required to produce some reason that it did not hire her.  *See Reeves v. Sanderson Plumbing*

*Products, Inc.,* 530 U.S. 133, 142 (2000) (discussing defendant's burden).[11]  According to

plaintiff, defendant has consistently failed to give such a reason and, therefore, its Motion for

Summary Judgment is due to be denied.  *See Alexander v. Fulton County, Ga.,* 207 F.3d 1303,

1342 (11th Cir. 2000) (finding that when defendant provided no reason, let alone a race-neutral

reason, to explain difference in treatment, a reasonable jury could conclude that the decision was

based on discrimination).

Plaintiff further argues that the testimony of the decisionmakers that they chose the

person who fit in the best with the school or who interviewed better is entirely subjective and too

vague to satisfy defendant's burden of production.  Plaintiff contends that, while an employer's

subjective reason for its employment decisions can constitute a legally sufficient, legitimate,

nondiscriminatory reason, the employer must articulate a clear and reasonably fact specific basis

upon which it based its subjective opinion.  *Chapman v. AI Transport,* 229 F.3d 1012, 1034

(11th Cir. 2000).  *See also E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1281 n.17 (11th

Cir. 2000) (stating, "employment decisions may legitimately be based on subjective criteria as

long as the criteria are capable of objective evaluation and are stated with a sufficient degree of

particularity").  Here, plaintiff asserts, defendant has failed to articulate such a fact specific basis

and has presented no evidence to indicate why others were chosen over plaintiff.

---

[11] In *Reeves* the court stated:

> This Court has not squarely addressed whether the *McDonnell Douglas* framework, developed to assess claims brought under § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U.S.C. § 2000e-2(a)(1), also applies to ADEA actions. Because the parties do not dispute the issue, we shall assume, arguendo, that the *McDonnell Douglas* framework is fully applicable here.

530 U.S. at 142.

**D.      Pretext.**

Plaintiff asserts that it is difficult for her to illustrate pretext because there is no legitimate reason to attack.  However, plaintiff maintains that her superior qualifications over those hired during the relevant time support an inference of age discrimination in this case.  Plaintiff recognizes that courts do not sit in judgment of the wisdom of employer's decisions and that a plaintiff "must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'"  *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir. 2004) (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)).  Plaintiff acknowledges that the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Cooper,* 390 F.3d at 732 (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000)).

In this case, plaintiff argues, her qualifications "jump off the page and slap you in the face" when compared with those of the teachers hired in her stead.  Plaintiff provides the following chart of the teachers hired in the 2002 positions for which she applied:

## TEACHERS  HIRED  IN  2002

| Name of Teacher | Date of Birth | Prior Teaching Experience | Education |
|---|---|---|---|
| Lisa Hughes | 09/29/59 | None transferable (some private) | Bachelor's Degree |
| Heidi Jones | 11/30/75 | 1 year | Bachelor's Degree |
| Lisa McVay | 03/20/75 | 4 years | Bachelor's Degree |
| Kelly Smith | 11/26/72 | 5 years | Bachelor's Degree |
| Sandy Smith | 07/28/75 | 3 years | Bachelor's Degree |
| Shannon Taylor | 07/16/79 | None | Bachelor's Degree |
| Greg Gidley | 09/22/70 | 1 year | Bachelor's Degree |

Plaintiff notes that none of the teachers had a graduate degree.  Additionally, plaintiff argues, none had over five years of experience.[12]  On the other hand, plaintiff points out, she had a master's degree and over thirty years of successful teaching experience, including one in defendant's school system.  Plaintiff also notes that six of the teacher's hired were born in the 1970's, and Hughes, as the oldest person hired, was still 20 years plaintiff's junior.  Plaintiff points to Miller's deposition testimony acknowledging that all those hired into the positions plaintiff sought were younger and conceding that, since 2001, defendant has not hired anyone over the age of 50.  (Miller Depo., pp. 64-66).

Plaintiff notes that Miller also testified that defendant gave no preference in hiring decisions to teachers with master's degrees over those with only bachelor's degrees.  (Miller Depo., p. 31).  Miller did admit that, all other things being equal, someone who has taught school

---

[12] Plaintiff also argues that one of these teachers did not even have her teaching certificate at the time she was chosen over plaintiff.  Plaintiff does not identify to whom she is referring.

would be more qualified for an opening than someone who is straight out of school.  (*Id.* at 31).
However, Miller stated, "[u]nder some circumstances, I think a younger teacher can be better
than an older teacher."  (*Id.* at 32).  Plaintiff points out that Hobdy also testified that previous
teaching experience is a factor in hiring decisions.  (Hobdy Depo., p. 36).

According to plaintiff, a jury might choose to disbelieve that defendant does not give
preference to teachers with additional qualifications.  Further, plaintiff argues, based on the
testimony of Miller and Hobdy, defendant deviated from its practice of giving weight to prior
teaching experience.  Such evidence of deviation from normal procedures, plaintiff contends, is
illustrative of pretext.  *See Bass v. Bd. of County Comm'rs, Orange County, Fla.,* 256 F.3d 1095,
1108 (11th Cir. 2001) (stating, "[a]n employer's violation of its own normal hiring procedure
may be evidence of pretext").

Plaintiff maintains that an objective reading of the qualifications of the teachers employed
by defendant illustrates that they were significantly less qualified than plaintiff.  Plaintiff argues
that her education and experience far exceed any of those selected for the teaching positions in
2002.  Further, plaintiff contends, the documentation she provided defendant from her
experiences as a teacher in Florida indicates that she had solid references that were
complimentary of her performance.  Additionally, plaintiff notes, during her year as a teacher for
defendant, nothing negative happened.  When she was terminated she was told she was laid off.
Plaintiff asserts that no one told her areas she needed to improve in or deficiencies she possessed.
According to plaintiff, none of the decisionmakers for the jobs at issue here checked into her
performance as a teacher.  Therefore, plaintiff asserts, her year teaching in Clay County could not
have negatively impacted their decisions.  Plaintiff declares that a jury could easily hear the

17

testimony in this case and believe the following: "These people took one look at a teacher over sixty years of age and, despite her qualifications, decided they did not want to hire someone that old at their school."

A reasonable jury could, plaintiff argues, conclude that she was discriminated against because of her age.  Plaintiff points out that the EEOC, an independent agency, already made such a determination.  Finally plaintiff concludes, the absence of a legitimate reason for the constant refusal to hire plaintiff, despite her superior qualifications, presents a jury question and defendant's Motion for Summary Judgement is without merit.

## II.    **Defendant's Response.**

### A.    **Claim by Plaintiff.**

Defendant acknowledges that plaintiff's contract was not renewed at the end of the 2000-2001 school year, but contends that the contracts of all other nontenured teachers were also not renewed.  Further, defendant disputes plaintiff's claim that she was not hired for the open teaching positions that were filled after her nonrenewal because of her age.  Defendant asserts that plaintiff has no specific evidence to support her position and points to plaintiff's following testimony:

> Q:    Do you have any basis to support a contention that when the Board members acted on that recommendation on May 17, 2001 to non-renew you that it was based on your age?
>
> A.    No.
>
> Q:    Would it be fair and correct then, Ms. Mitchell, to say that the basis of your complaint in this lawsuit is based upon repeated applications that you made after June of 2001 for employment at the various schools?
>
> A:    Yes.

(Mitchell Depo., pp. 34-35).

Defendants assert that, although she has sued the Board of Education, plaintiff admitted that she knew none of the Board members and has never had any discussion with any of them. Defendant highlights the following testimony by plaintiff:

> Q:   With regard to any other–do you know the names of any other Board members that were on the Board after 2001; that is, June of 2001?
> A:   No.  I don't remember any of their names.
> Q:   Have you had any discussions with any of the Board members whose names we're not discussing at this point about your employment situation?
> A:   No.

(Mitchell Depo., p. 38).

Defendant further argues that Mitchell acknowledged that the Board members, to her knowledge, were never presented with a recommendation by the superintendent that she be considered for employment:

> Q:   Do you know from June of 2001 up to the present if the superintendent of the Clay County Board of Education has ever recommended you for employment to the Board?
> A:   No.  I don't think so.  I don't know.  I don't know that.
> Q:   All right.  Stated otherwise, do you know of any instance where the Board has had the opportunity after June of 2001 to employ you or not to employ you based on the recommendation of the superintendent?
> A:   No.  I don't know that.
> Q:   If the Board has never gotten a recommendation to consider you for employment, would you agree that the Board has never acted to discriminate against you; that is, the Board itself – the five member Board itself?
> A:   No.  I don't think they would – that they did.
> Q:   We can agree then that if your name was never put before them as required by the statue (*sic*) then they've never had an opportunity to approve or disapprove your employment since June of 2001; would that be correct?
> A:   Yes.

(Mitchell Depo., pp. 40-41).

Defendant asserts that, in discussing her contention that she believes she has been the

victim of discrimination, plaintiff admitted that she did not know why any principal had

recommended any person other than her:

> Q:     Okay.  In the EEO (*sic*) complaint, Ms. Mitchell, you indicate that after you were non-renewed that you had three interviews during that summer.
> A:     Yes.
> Q:     To be employed for the 2001-2002 school year.  At what schools and with what principals did you interview?
> A:     I interviewed with Mr. McCullars at Mellow Valley, Ms. Nina Hobdy at Ashland Elementary and Mr. Jim Young at Lineville Elementary.
> Q:     At Mellow Valley, what was the position?
> A:     I'm not certain what the position was there.
> Q:     Do you know right offhand who was employed for the position that you were interviewing?
> A:     I don't.
> Q:     Do you know the age of the person?
> A:     I don't know the person.
> Q:     Do you know why the principal recommended the other person rather than you?
> A:     I don't know that either.
> Q:     Do you have any basis to support a contention that the principal that made the decision did so because of your age?
> A:     As I said before, people with less experience, lesser credentials and much younger were always hired.  So that's all I can say about that.
> Q:     I know that's your position and I'm not questioning that.  But I'm looking at the individual applications and jobs.  The principal at Mellow Valley was who?
> A:     Mr. McCullars.
> Q:     Do you know him other than that interview?
> A:     No.
> Q:     Would you agree that in making a decision that – who to employ for a particular position, that a principal can do so for legitimate non-discriminatory reasons?
> A:     Yes.
> Q:     And you also know that if a principal makes a decision based on a person's age discriminating against them because of their age, that that's violative of the law?
> A:     Yes.
> Q:     With regard to the decision of Mr. McCullars at Mellow Valley, do you have any basis to share with me that his reason was based on your age rather than for legitimate non-discriminatory reasons with regard to the person that was employed?

A:    I don't know what his reasons were for not hiring me.

Q:    Are you contending without knowing what his reasons were that he discriminated against you because of your age?

A:    Possibly.  I don't know what they were.

Q:    Nina Hobdy.  You interviewed with her for – was it Ashland Elementary?

A:    Yes.  Ashland.  Second grade.

Q:    Did you interview with her in July or August for that next school year?

A:    Yes.  It probably was July.  I'm not sure of the date.

Q:    Was it for just one position?

A:    Yes.  I think she had only one.

Q:    All right.  How long was her interview with you?

A:    I don't recall exact time.

Q:    Was she cordial and respectful?

A:    Yes.

Q:    After she made the decision to hire someone else, did you talk to her?

A:    No, I didn't.

Q:    Do you have any basis to believe or support a contention that her reason to hire someone else was based on your age rather than legitimate non-discriminatory reasons?

A:    I don't know that.

Q:    You interviewed with Jim Young at Lineville?

A:    Yes.

Q:    For what position?

A:    I think he had a second grade and the sixth grade I believe.

Q:    And you interviewed for both of those positions?

A:    Yes.

Q:    Did you tell him that you're really not interested in the sixth grade position?

A:    I told him I prefer the second grade because that's where my expertise is.

Q:    All right.  Did you tell him more than that?  That you really were not interested in the sixth grade position?

A:    No, I didn't.

Q:    After he made the decision to hire the people that were recommended for those two positions, did you go back and talk to Mr. Young about the reasons?

A:    No.

Q:    From any source, do you have any basis to support a contention that Jim Young made his decision whom to recommend for employment based on age discriminatory factors towards you as opposed to legitimate non-discriminatory reasons in support of the people he recommended?

A:    I have no idea why.  I was never told by anyone any reason for not being hired.

(Mitchell Depo., pp. 48-53).

### B.    Alabama Statute.

Defendant notes that, in Alabama, all employment decisions for public schools must be

recommended in writing by the county superintendent and approved by the Board of Education.

Ala. Code §§ 16-8-23, 16-9-23 (1975).  Defendant asserts that the members of the Board of

Education state in their affidavits that they did not know plaintiff's age and never considered her

age when she was nonrenewed in May of 2001.  (Oliver Affid.; Harris Affid.; Gautney Affid.).[13]

Moreover, defendant argues, plaintiff's name never came before the Board of Education for any

consideration after May of 2001.  (*Id.*)  Therefore, defendant maintains, it is clear that the

members of the Board of Education did not discriminate against Plaintiff.

### C.    Protocol for Employment.

Defendant points out that Superintendent Miller testified that his practice was to rely on

the recommendation of his principals.  (Miller Affids.).[14]  Further, defendants argue, Miller

---

[13] Plaintiff moves to strike the affidavits of Oliver, Harris, and Gautney pursuant to Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 402.  Plaintiff asserts that Rule 56(e) requires that supporting affidavits be made on personal knowledge and set forth facts that would be admissible in evidence.  According to plaintiff, the information contained in these three affidavits would not be admissible in evidence because they are not relevant pursuant to Federal Rule of Evidence 402.  Plaintiff contends that the affidavits state the these board members were never given the option of hiring Plaintiff in the 2002 school year.  Therefore, plaintiff asserts, these board members were not decisionmakers in the decision not to employ her.  Plaintiff concludes that their testimony that they did not consider her age is irrelevant.

[14] Plaintiff moves to strike the affidavits of Miller, Hobdy and Young.  Plaintiff claims that these affidavits contain inadmissible hearsay and irrelevant information that does not comport with Federal Rule of Civil Procedure 56(e).  For example, plaintiff notes that Miller's affidavit states, "The principals were making their recommendations based on whom they thought was the best applicant from the pool of applicants they considered."  (Miller Affids.).  Plaintiff asserts that this statement is not made based on personal knowledge.

testified that plaintiff's age was never a consideration and never discussed in any context by anyone. (*Id.*)  Miller stated that the principals' recommendations were made because of the positive attributes of the selected applicants.  (*Id.*)  Miller also testified that he never recommended plaintiff as an applicant to the Board subsequent to her nonrenewal in May of 2001.  (*Id.*)

> ### D.   Affidavit of Principal James Young, Principal at Lineville Elementary School.[15]

---

Secondly, plaintiff asserts that these affidavits should be stricken to the extent that they change the testimony given in the depositions.  Plaintiff notes that a district court may find an affidavit which contradicts the person's deposition to be a sham when the contradiction is without a valid explanation.  *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656 (11th Cir. 1984).  According to plaintiff, a sham can be inferred particularly when clear answers to unambiguous questions were given by the deponent and then changed in the affidavit. *Musarra v. Vineyards Development Corp.*, 343 F.Supp.2d 1116, 1121 (M.D. Fla. 2004).

Defendant has submitted two affidavits by Miller.  In the first affidavit, plaintiff moves to strike only the statement that "the principal would interview applicants [and] decide who was the best qualified."  Plaintiff asserts that this statement is hearsay as it is not based on personal knowledge.

Miller's second affidavit was signed on December 15, 2004.  Plaintiff moves to strike the statements in this affidavit relating to the teaching positions for the 2001-2002 school year. Plaintiff contends that those positions are not at issue in this action and, therefore, irrelevant. Plaintiff also moves to strike Miller's statements in this affidavit relating to the reasons he allegedly chose teachers in 2002.  These statements, plaintiff maintains, contradict his deposition testimony.  Plaintiff points out that Miller testified in his deposition that he relies on the principals' recommendations for teachers and otherwise "stays out of it."  (Miller Depo., pp. 11, 18).   Plaintiff claims that Miller mentioned in his deposition that consolidation took place in the 2003-2004 school year, but did not inform plaintiff's counsel that he directly interviewed and hired teachers, as reflected in his second affidavit.  Miller's affidavit contends that he remembers these teachers' interviews and was "impressed from the interviews that they would do a good job for us under the distressing situation that we were faced (*sic*)."  (Miller Affids.).  Plaintiff moves to strike this information, asserting that it contradicts Miller's prior deposition testimony.

[15] Plaintiff moves to strike portions of Young's affidavit because they contradict his deposition testimony.  Plaintiff asserts that, in his deposition, Young stated that he only interviewed plaintiff one time for a fifth-grade position.  (Young Depo., p. 9).  He stated that

Young testified that he interviewed plaintiff one time, during the summer of 2001.

---

plaintiff told him that she was not comfortable with teaching the fifth grade, and he recommended Greg Gidley for the position. (*Id.* at pp. 16-17).  When questioned about this position and recommendation, Young stated:

> Q:    And is it a fair statement that the reason that you would have picked Greg Gidley over Ms. Mitchell is that she told you she didn't even really want a fifth grade position?
> A:    At that time, that's correct.
> Q:    Was there anything else during her interview that made you concerned about Ms. Mitchell as far as hiring her?
> A:    In our conversation, anytime that I interview any teacher, we just begin a conversation.  I try to make them as comfortable as possible and then we begin to explore topics that might be more appropriate for the grade level. If I was asking a kindergarten teacher, I might ask different questions than if I was talking to a sixth grade teacher.  And in comparison to a lot of the answers that I've had from a lot of the applicants, Ms. Mitchell's responses to the best of my recollection were somewhat vague and general and though not inappropriate were not as strong in context and content as some of the answers that I may have received from some of the other applicants.
> Q:    And that was when you were asking her the questions about fifth grade; is that right?
> A:    Yes, Ma'am.

(*Id.* at pp. 16-18).  Plaintiff asserts that Young testified that this was the only position for which he considered her, despite other positions being open in the relevant time frame. (Young Depo., pp. 15-16).  Plaintiff argues that Young's testimony changed in his affidavit, where he stated:

> It is true that I recommended for employment several other teachers during the 2001-2002, 2002-2003 school years.  But in each instance the teachers that were recommended were teachers that convinced me that they were more knowledgeable about our specific curriculum at Lineville Elementary School; more in tune with our philosophy about classroom management; and more enthusiastic and eager to created the learning environment that I thought was appropriate for our young students.

(Young Affid.).  Plaintiff asserts that this testimony contradicts Young's earlier deposition testimony that he did not compare plaintiff to anyone other than Gidley and, therefore, should be stricken.

24

(Young Affid.).  Young stated that plaintiff did not answer his questions in a way that impressed

him.  (*Id.*)  According to Young, plaintiff was not very knowledgeable about the curriculum and

not clear about her strategies for classroom management.  (*Id.*)  Defendant notes that Young

testified that, every time he recommended someone for employment, he did so because he

believed they were more informed, knowledgeable and enthusiastic than the other applicants.

(*Id.*)  Young also stated that he has hired teachers over the age of 50 and that they have been

"outstanding" and "excellent" teachers.  (*Id.*)  Young further testified that age was not a

consideration he used in deciding who to recommend for teaching positions at his school.  (*Id.*)

### E.    Affidavit of Nina Hobdy, Principal Ashland Elementary School.[16]

Hobdy interviewed plaintiff and a number of other applicants in the summer of 2001.

(Hobdy Affid.).  Defendants point to Hobdy's testimony that, after interviewing the applicants,

she thought Hughes, Kelly Smith and Gidley were better choices than plaintiff for the positions

available.  (*Id.*)  In her affidavit, Hobdy testified as to the reasons why she recommended the

---

[16] Plaintiff moves to strike portions of Hobdy's affidavit because they contradict her
deposition testimony.  Plaintiff contends that when asked in her deposition about the individuals
she recommended instead of plaintiff, Hobdy gave no specific reasons for her choices.  Instead,
plaintiff asserts, Hobdy stated that those recommended were simply more in line with what she
was looking for in the vacant positions.  (Hobdy Depo., pp. 12-23).  Plaintiff notes that, when
asked about plaintiff's interview, Hobdy could not remember "specifically the questions that
[she] asked or [plaintiff's] responses."  (*Id.* at p. 11).  She also stated that she did not specifically
remember her interview with plaintiff.  (*Id.* at p. 15).  According to plaintiff, Hobdy did not
remember the backgrounds, education or experience of the teachers she chose.  (*Id.* at pp. 15, 17).
In contrast to her deposition testimony, plaintiff asserts that Hobdy's affidavit provides numerous
specifics about the chosen teachers' enthusiasm, energy, and knowledge of the curriculum.
(Hobdy Affid.).  Further, plaintiff states that Hobdy's affidavit asserts that plaintiff had "a decent
but not exceptional interview.  She communicated interest in the job, but she did not convey any
particular excitement or eagerness.  It was as if she had done the drill–the teaching drill–for many
years and she was comfortable in that role.  But she did not have the enthusiasm, the excitement,
the eagerness that other applicants had."  (*Id.*)  Plaintiff argues that this affidavit testimony
contradicts Hobdy's previous deposition and should, therefore, be stricken.

other applicants. (*Id.*) She stated that Hughes was energetic, enthusiastic, and well versed in the curriculum. (*Id.*) According to Hobdy, she knew from prior experience that Kelly Smith was dedicated, well organized and related well to students and parents. (*Id.*) Hobdy stated that she thought Gidley would be an excellent role model. (*Id.*) Hobdy stated that she did not consider plaintiff's age in any form or fashion when making her decisions. (*Id.*)

F.      **Evaluation of Joyce Mitchell.**

Jim Luker, a former assistant principal at Ashland Elementary School, evaluated plaintiff during the 2000-2001 school year when she was teaching at Bibb Graves School. (Luker Affid.) Luker testified that he has been unable to locate the evaluation, but that he felt that plaintiff should have been doing a better job engaging students so that they were all actively involved in tasks. (*Id.*) Luker further stated that plaintiff took exception to this evaluation and wrote Luker expressing her disagreements with his report. (*Id.*) Luker has also been unable to locate this letter. (*Id.*)

Bobby Vinson, the coordinator for teacher evaluations for the Board of Education, testified that concerns were expressed related to plaintiff's classroom management and her ability to effectively engage the students in her class. (Vinson Affid.). Vinson testified that he shared these concerns with principals and other administrators. (*Id.*)

Finally, defendant points to the testimony of Winston Wheeles, the principal of Bibb Graves School during the 2000-2001 school year, that he was told to cut teacher units because of spending overages and that he nonrenewed all teachers who were on probationary status,

26

including plaintiff.  (Wheeles Affid.).[17]

G.    **Specific Response to Plaintiff's Position.**

Defendant admits that plaintiff satisfies the jurisdictional prerequisites for the filing of her

Complaint.  Defendant further admits that plaintiff has satisfied the elements of her prima facie

case.  However, defendant maintains that it did not engage in age discrimination against plaintiff.

Defendant argues that the affidavits of the elementary school principals who made the

recommendations on which teachers should be hired demonstrate that they had legitimate,

nondiscriminatory reasons for not recommending plaintiff.  According to defendant, plaintiff has

not produced any causal evidence linking the decisions that were made with her age.  Defendant

contends that plaintiff has not produced any evidence that the principals, superintendent or Board

members considered her age in making their employment-related decisions.  Finally, defendant

asserts that it has produced abundant evidence that age was never a factor in its hiring decisions.

III.    **Plaintiff's Reply.**

A.    **The Board of Education is the Correctly-Named Defendant and It Is Liable
        for the Actions of Its Agents.**

Plaintiff asserts, "[t]he relief granted under Title VII is against the employer, not

individual employees whose actions would constitute a violation of the Act." *Hinson v. Clinch*

---

[17] Plaintiff moves to strike the affidavits of Luker, Vinson and Wheeles as irrelevant
under Federal Rule of Evidence 402.  Plaintiff asserts that the decisionmakers in this case are
Miller, Hobdy and Young and the decision at issue is the one not to hire plaintiff in 2002.
(Plaintiff asserts that the decision to terminate her in 2001 is not an issue in this lawsuit.)
According to plaintiff each of these three decisionmakers testified that they did not discuss
plaintiff with former administrators or look at her performance evaluations when making their
hiring decisions for the 2002 school year.  (Miller Depo., pp. 47-48, 59; Hobdy Depo., pp. 13, 23;
Young Depo., p. 18).  Given this, plaintiff contends, the affidavits of Luker, Vinson and Wheeles
provide no information that is relevant to the non-hiring of plaintiff in 2002.

*County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991)).  Plaintiff notes that the *Busby* court concluded, "[w]e think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby*, 931 F.2d at 772.

According to plaintiff, defendant's brief focuses on its contention that the Board members act only on the recommendation of the superintendent and that they cannot go beyond these recommendations.  Plaintiff does not dispute the procedure outlined by the defendant's brief, the state statute cited therein, or the deposition testimony relating to the issue.  However, plaintiff asserts that the Board, the employer, is responsible for the actions of the principals and superintendents under Title VII.  Plaintiff asserts that she could not sue the individual decisionmakers (Miller, Hobdy, Young, McCullars).  *See Busby*, 931 F.2d at 772 (finding that suing persons in their individual capacities under Title VII is inappropriate).

Additionally, plaintiff contends that her deposition testimony relating to the Board members alleged lack of animus against her is without consequence.  Plaintiff alleges that the affidavits submitted by the Board members indicate that they were not involved in these hiring decisions other than to rubber stamp the superintendent's recommendations.  According to plaintiff, there is no requirement under Title VII that the individual Board members must possess a discriminatory animus against her when they were not the decisionmakers at issue.

**B.     Defendant's Contention that Plaintiff "has no specifics to support her assertions," Is False.**

Plaintiff notes that defendant's brief states that plaintiff has no specifics to support her

28

assertion that she was better qualified to fill the positions in 2002.  Defendant's brief states that

plaintiff "admitted that she did not know why any principal had recommended any person other

than her."  Plaintiff disputes these assertions.  Plaintiff points to her own deposition testimony:

> Q:      Do you have any basis to support a contention that principal (*sic*) that
>         made the decision did so because of your age?
> A:      As I said before, people with less experience, lesser credentials and much
>         younger were always hired.  So that's all I can say about that. . . . I was
>         never told by anyone any reason for not being hired.

(Mitchell Depo., pp. 49-50, 53).

Plaintiff asserts that defendant is focusing on the absence of direct evidence of

discrimination.  Plaintiff acknowledges that she does not have any such direct evidence.

However, she argues that direct evidence in discrimination cases is encountered infrequently and

is composed of only the most blatant remarks.  *Cooper v. Southern Co.,* 390 F.3d 695, 724  n.15

(11th Cir. 2004).  Without direct evidence, plaintiffs can use circumstantial evidence to prove

discrimination as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id.* at 723-

24.  Further, plaintiff contends that circumstantial evidence often consists of comparative

evidence, of which she repeatedly referenced in her deposition.

Plaintiff contends that defendant has failed to articulate a legitimate reason for its failure

to hire her.  This is so, plaintiff argues, even if the court considers the affidavits she has moved to

strike.  Plaintiff notes that Miller's affidavit states that he chose the teachers during the summer

of 2002 because they "impressed [him] as being knowledgeable about the curriculum, eager to be

employed at the school, and very positive about their ability to do a good job for the school

system."  (Miller Affids.)  Plaintiff asserts that Miller gives no reason why she was not hired

other than that he made his decision based on the recent interviews without considering previous

interviews he had conducted, including that of plaintiff.  (*Id.*)  Plaintiff asserts that Miller relied

only on his most recent interviews despite admitting that he remembered plaintiff had expressed

an ongoing interest in being a teacher.  (*Id.*)  According to plaintiff, Miller essentially says that he

was in such a time crunch that he hired all the young teachers and not the old one, without a

legitimate reason for doing so.

 Plaintiff points out that Hobdy's affidavit states, "[b]eyond competence, what I want in a

teacher who is dealing with my young, impressionable students is a teacher who will relate

positively, enthusiastically, and who will create an interesting, challenging environment by

engaging the students."  (Hobdy Affid.).  However, plaintiff asserts, other than stating that the

other candidates were "a better fit" or had the "personality, desire and ability to fill a particular

role in our school," Hobdy does not articulate distinctions or reasons plaintiff was not

recommended.  Hobdy further states: "I do not remember specifically even considering Joyce

Mitchell [for several positions].  I just do not recall specifically."  (*Id.*)  In describing plaintiff's

interview with her, Hobdy states that it was "decent" and that she was impressed with plaintiff's

experience, but "was not impressed that she brought the same excitement nor the same ability to

relate to students that the persons that I hired would do."  (*Id.*)   Plaintiff contends that this

testimony directly contradicts Hobdy's deposition testimony that she did not remember the

interview with plaintiff or any negatives about it.

 Plaintiff notes that Young's affidavit states that he only interviewed plaintiff for one

position.  Plaintiff disputes this account, and asserts that she interviewed with Young for more

than one opening and that all those openings were filled with younger, less qualified teachers.

 It is plaintiff's position that the only reasons defendant can give for not hiring plaintiff is

that she was not as exciting as other applicants.  Plaintiff argues that a jury may find that the real reason was her age.

Plaintiff draws the court's attention to *Thomas v. Troy City Board of Education,* 302 F.Supp.2d 1303 (M.D. Ala. 2004), where the Board of Education contended that it did not hire the plaintiff as superintendent because he was less qualified than other applicants.  302 F.Supp.2d at 1307.  The chairman of the Board testified that he was looking for a superintendent who had an emphasis on academic programs.  *Id.*  The person chosen for the position at issue, Jones, objectively possessed more experience in that area than did the plaintiff.  *Id.*  Additionally, the school system asserted that Jones had more education than did the plaintiff.  *Id.* at 1308.  The court granted summary judgment in favor of the defendant, concluding that the plaintiff's qualifications did not "jumped off the page" in comparison to those of Jones.  *Id.* at 1308-09.

Plaintiff asserts that, in contrast to the defendant in *Thomas*, the defendant here has asserted no legitimate reasons for failing to hire plaintiff.  Therefore, plaintiff contends, defendant should not be allowed to escape a jury trial over the ultimate issue of discrimination.  Plaintiff asserts that her objective qualifications were obviously superior to all of the seven teachers hired by defendant in 2002.  She asserts that defendant's affidavits put forth totally subjective reasons for failing to hire her.  Plaintiff states that, while a defendant can certainly utilize an interview in making hiring decisions, defendant has failed to articulate clear, legitimate examples from the interviews to support its decisions.

Plaintiff points to the following passages from *Chapman v. AI Transport,* 229 F.3d 1012 (11th Cir. 2000):

Nonetheless, we are mindful of the requirement articulated by the Supreme Court

in *Burdine* that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific" so that "the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096 (quotation omitted). A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. Continuing our example of a sales clerk or wait staff position, it might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion--the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant. The burden would then shift back to the plaintiff to offer sufficient evidence for a reasonable factfinder to find that the defendant's reason was pretext for discrimination.

229 F.3d. at 1034

> The warnings in *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1255-56 (11th Cir. 1999) (en banc) (Carnes, J., concurring), about the dangers of "perception prevarication" are not inconsistent with our holding in this case. Those warnings were directed at purely subjective, conclusory impressions of a litigant that are devoid of any objective facts which, if false, can be contradicted by testimony or other evidence. As we explain in the text, where a decisionmaker's subjective reason is supported by a "clear and reasonably specific" explanation, as required by *Burdine*, there will be objective factors that can be tested against other testimony and evidence.

*Id.* at 1034 n.25.

Plaintiff notes that, in *Chapman*, two reasons were articulated by the defendant for failing to hire the plaintiff: lack of stability in job history and a poor interview.  229 F.3d. at 1028-29. Further, the *Chapman* employer articulated how the interview was poor, including giving specific examples of unclear answers and answers that were not expected of someone who would fill the position.  *Id.* at 1035.

Plaintiff contends that the evidence presented by defendant in the affidavits is similar to the "I did not like his appearance" example from *Chapman* rather than the specific reasons given by the *Chapman* defendant.  Plaintiff asserts that the decisionmakers in this case only give reasons such as the other applicants "being a better fit" to justify hiring younger and less-qualified teachers.  Plaintiff maintains that the subjectivity of these reasons fails to meet defendant's burden of articulating a legitimate, non-discriminatory reason for its decisions.

Finally, plaintiff argues that, even if this court determines that defendant has met its burden of production, she has presented significant evidence of pretext.  Plaintiff asserts that every teacher hired in the 2002 school year was substantially younger than she, and had less teaching experience and education.  Plaintiff contends that the fact that seven positions were awarded to less-qualified applicants, including teachers fresh out of school with no experience, is evidence of discrimination.  Based on this evidence, plaintiff maintains that a jury could conclude, as did the EEOC, that defendant repeatedly discriminated against her because of her age.

## CONCLUSIONS OF THE COURT

The court concludes that the defendant's Motion should be, and will be, denied.  It appears obvious that the plaintiff has proved a prima facie case.  Defendant's articulated reason(s) are nebulous.  On the other hand, it also clearly appears that the decisions made by the various principals were unrelated individual decisions.  For this reason, the court will give the defendant an option.  The first option is to try the case with regard to all positions at the same time.  The second option is to require that the plaintiff select two positions for the first trial and sever the rest.  The defendant will file its choice within 10 days.

33

This 4th day of January, 2005.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**